**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond J. Dumont and Kathleen A. Dumont, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>HSBC Mortgage Corporation, USA, a Delaware Corporation; Mortgage Electronic Registration Systems Inc.; a Delaware Corporation; Investors 1-1000 and Michael A. Bosco, Trustee,<br><br>Defendants. | No. CV-10-1106-PHX-MHM<br><br>**ORDER** |

Currently pending before this Court are Defendants HSBC Mortgage ("HSBC") and Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss Plaintiff's Complaint, (Doc. 8), and Motion to Dissolve Temporary Restraining Order, (Doc. 10), and Defendant Michael A. Bosco's Motion for Ruling on Pending and Undecided Motion to Dismiss & Request for Attorney's Fees, Costs, and Sanctions. (Doc. 12). Having considered the Pleadings and determined that oral argument is unnecessary, the Court issues the following Order:

I.  BACKGROUND

Plaintiffs Raymond and Kathleen Dumont originally brought this action in Maricopa County Superior Court, but it was removed to federal district court on May 21, 2010. (Doc.

1). Prior to removal, on May 5, 2010, the state court issued, without notice to Defendants, a Temporary Restraining Order ("TRO") prohibiting Defendant Michael A. Bosco ("Bosco") from conducting the planned non-judicial Trustee's Sale of the Plaintiff's property / residence. (Doc. 1, exh. A). Also prior to removal, on May 13, 2010, Bosco filed a Motion to Dismiss and Request for Attorney's Fees. (Doc. 1, exh. D). On the same day, in response to Bosco's motion, the state court extended the duration of the TRO at least until Bosco's motion could be fully briefed and, if necessary, an evidentiary hearing held. (Doc. 1, exh. B). On June 24, 2010, Bosco filed the instant Motion for Ruling on Pending and Undecided Motion to Dismiss & Request for Attorney's Fees, Costs, and Sanctions. (Doc. 12). Plaintiffs have not responded to Bosco's Motion to Dismiss.

In their Complaint, Plaintiffs assert numerous claims for relief grounded in state law, alleging improper non-judicial foreclosure, breach of contract, the unconstitutionality of Arizona Revises Statutes ("A.R.S.") § 33-811(B), fraudulent concealment, and appraisal fraud. Defendants HSBC and MERS filed their Motion to Dismiss on May 28, 2010, (Doc. 8), and the motion became fully briefed on June 28, 2010. (Doc. 10). On June 23, HSBC and MERS filed their Motion to Dissolve Temporary Restraining Order. (Doc. 10). Because this case was removed from state court, the state court never considered whether the TRO should become a preliminary injunction.

II.   DEFENDANTS' MOTIONS TO DISMISS

    A.   <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the plaintiff must simply allege facts sufficient "to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007); <u>see also</u> <u>Morley v. Walker</u>, 175 F.3d 756, 759 (9th Cir. 1999) ("A dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>,    U.S.   , 129 S. Ct. 1937, 1949, 173

L. Ed. 2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In evaluating a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party." Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998). However, "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Spreewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Likewise, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965. Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

B. Facts

For this motion to dismiss, Plaintiffs' allegations of material fact are assumed to be true and are construed in the light most favorable to them. See Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009). Plaintiffs Raymond and Kathleen Dumont refinanced their home mortgage in the amount of $412,500 on or about May 30, 2007. (Pls. Compl. ¶ 8.) Plaintiffs executed a promissory note in favor of their lender, Defendant HSBC Mortgage Corporation, USA. (Pls. Compl. ¶ 8 & Exh. A.) The note was secured by a deed of trust. [Ex. B.]. The deed of trust identified Defendant Mortgage Electronic Registration Systems, Inc. as a beneficiary under the deed of trust acting "solely as nominee for Lender and Lender's successors and assigns." (Id.) Plaintiffs were served with a Statement of Breach and Non-Performance.[1] Effective January 21, 2010, MERS assigned and transferred all beneficial interest under the deed of trust to HSBC as the beneficiary of the mortgage

---

[1] It appears that Plaintiffs admit they defaulted on their payment obligations, but they do not do so explicitly. Instead, they make reference to having received a Statement of Breach and Non-Performance. They do not, however, deny they failed to make required payments, and none of their legal claims are predicated on such a fact. [Id. at ¶¶ 9, 14.]

obligation. (Doc. 8, Corporation Assignment of Deed of Trust, Ex. C). Effective January 27, 2010, HSBC appointed attorney Michael A. Bosco as Substitute Trustee. (Doc. 8, Substitution of Trustee, exh. D.) On February 3, 2010, Mr. Bosco noticed the Trustee Sale. (Doc. 8, Notice of Trustee Sale, exh. E).[2] During this time, HSBC Mortgages Services, Inc., aka Household Financial Services, Inc., serviced the Plaintiffs' mortgage loan. (Pls. Compl. ¶¶ 8, 11, 13.) The Trustee's Sale was originally noticed for May 5, 2010, but has since been continued pursuant to the TRO issued by Maricopa County Superior Court.

C. Bosco's Motion to Dismiss

It is undisputed that Defendant Bosco, as Trustee, has attempted to initiate a non-judicial foreclosure of Plaintiffs' property. Title 33 of the Arizona Revised Statutes governs deeds of trust and trustee's sales in Arizona. A.R.S. § 33-807(E) provides:

> *The trustee need only be joined as a party in legal actions pertaining to a breach of the trustee's obligation under this chapter or under the deed of trust.* Any order of the court entered against the beneficiary is binding upon the trustee with respect to any actions that the trustee is authorized to take by the trust deed or by this chapter. *If the trustee is joined as a party in any other action, the trustee is entitled to be immediately dismissed* and to recover costs and reasonable attorney fees from the person joining the trustee.

(emphasis added). Plaintiffs' Complaint does not allege that Bosco breached any obligation under Arizona's trust-deed statutes, such as providing the requisite notice, see A.R.S. § 33-809(a)(2)–(4); Id. § 809(b)(3), instead it claims that neither HSBC nor MERS had the authority to appoint Bosco as Substitute Trustee. Because Plaintiffs have failed to allege that Bosco breached his obligations as trustee, he is not a proper party to this action and must be dismissed. A.R.S. § 33-807(E); see Cervantes v. Countrywide Home Loans, Inc., 2009 WL 3157160, *12 (D. Ariz. Sep. 24, 2009) (dismissing Tiffany and Bosco ("T&B") from lawsuit pursuant to § 33-807(E) where only allegation against T&B in its capacity as trustee was,

---

[2]In setting forth the relevant facts of this case, the Court relies on three public-record documents—"Corporation Assignment of Deed of Trust", "Substitution of Trustee," and "Notice of Trustee Sale"— attached to Defendants HSBC and MERS's Motion to Dismiss. The Court may rely on these documents without controverting their motion into one for summary judgment, as "a court may take judicial notice of 'matters of public record.'" Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (quoting FED. R. EVID. 201).

1 | like in this case, "that MERS has no authority to appoint a trustee").

Bosco has also requested attorney's fees. The statute is clear: "If the trustee is joined [improperly], the trustee is <u>entitled</u> to be immediately dismissed and to recover costs and reasonable attorney fees from the person joining the trustee." A.R.S. § 33-807(E) (emphasis added). The Court, therefore, must grant Bosco's request for fees and cost. Bosco may file an application for his attorneys' fees and costs in this matter by August 2, 2010. The application shall include all briefing and supporting materials. Plaintiffs shall file a response by August 16 , 2010, which shall also set forth all briefing and supporting materials.

### D. MERS and HSCB's Motion to Dismiss

Defendants MERS and HSCB ("Defendants") ask this Court to dismiss Plaintiffs' entire complaint under Rule 12(b)(6) for failure to state a claim. Plaintiffs' Complaint, which is fifty-five pages in length, states seven claims for relief. The Court will address each in turn, as well as a claim pertaining to the constitutionality of A.R.S. § 33-811(B) which is plead, but not specifically numbered.

#### 1. Claims 1 and 2: Injunctive Relief and Declaratory Relief

Plaintiff's first two claims—Injunctive Relief and Declaratory Relief, respectively—are underpinned by the same legal theory; what this, and other courts, have labeled "show-me-the-note." Plaintiffs assert that Defendants HSBC and MERS (and, therefore, Bosco) lack the authority to exercise the power of non-judicial foreclosure contained in the deed of trust "without first demonstrating that the person or entity conducting the Trustee's Sale has authority from the original lender 'principal' or from the assignee of record of the original lender to do so." (Pls. Compl. ¶22, 25). In other words, Plaintiffs' contend that Defendants must produce the original note or other entitlement to enforce the note to exercise the power of non-judicial foreclosure, i.e. they want to be shown the note. Accordingly, Plaintiffs want this Court to prevent Defendants from foreclosing on their property and declare that an such foreclosure is unlawful. Their position, however, is incorrect.

Under Arizona law, "[u]nlike their judicial foreclosure cousins that involve the court,

deed of trust sales are conducted on a contract theory under the power of sale authority of the trustee." In re Krohn, 52 P.3d 774, 777 (Ariz. 2002). "[A] power of sale is conferred upon the trustee of a trust deed under which the trust property may be sold . . . after a breach or default in performance of the contract or contracts, for which the trust property is conveyed as security . . . ." A.R.S. § 33-807(A). The Arizona statutes governing the sale of foreclosed property through a trustee's sale, therefore, do not specifically require that the foreclosing party produce a physical copy of the original promissary note. Nor does the Arizona Uniform Commercial Code ("AUCC.").

The AUCC, among other things, governs the enforcement of negotiable instruments, providing that "'[p]erson[s] entitled to enforce' an instrument include the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 47-3309 [because the note is lost or destroyed]." A.R.S. § 47-3301. However, as the District of Arizona first explained in Dumesnil v. Bank of America., N.A., a "Deed of Trust . . . is not an 'instrument' under the Arizona Uniform Commercial Code--Negotiable Instruments" and, therefore, the AUCC is not applicable to non-judicial foreclosures. 2010 U.S. Dist. LEXIS 44394 (D. Ariz. Apr. 6, 2010). Accordingly, when addressing the applicability of the AUCC to non-judicial foreclosure sales, courts within the District of Arizona "have routinely held that [a plaintiff's] 'show me the note' argument lacks merit." Diessner v. Mortgage Elec. Registration Sys., 618 F. Supp. 2d 1184, 1187-88 (D. Ariz. 2009) (quoting Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009)). As such, Counts 1 and 2 are hereby dismissed with prejudice.[3]

---

[3]The Court notes that every claim plead in Plaintiffs' Complaint alleges facts which are related to the show-me-the-note theory. Viewed in its entirety, Plaintiffs Complaint reads primarily as an attack on non-judicial foreclosures and the processes associated with them, especially the fact that a non-judicial foreclosure may be commenced without production of the original note. That Plaintiffs chose this line of attack is curious, as Plaintiffs' counsel was the counsel of record on Dumesnil v. Bank of America., N.A., in which a nearly identical show-me-the-note claim was rejected. More curious still, Plaintiffs' counsel failed

2.   Claim 3:  Breach of Contract

Plaintiffs' second claim for relief is for breach of contract.  Plaintiffs allege that Defendants violated the terms and condition of the deed of trust, which they label as a contract, by failing, in the Statement of Breach or Non-Performance,[4] to provide Plaintiffs with a notice of their default, notice of thirty days to cure the default, and notice of their right to bring a court action to assert the non-existence of a default or any other defense.  "To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages."  Graham v. Asbury, 112 Ariz. 184, 185 (1975).  Defendants argue that Plaintiffs' contract claim must be dismissed as a matter of law because: (1) it does not state how the notice requirements of the deed of trust were violated; and (2) it does not allege damages.

Turning first to the former contention, the Court finds that Plaintiffs' Complaint does explain how the Statement of Breach and Non-Performance violated the deed of trust.  Very specifically, the Complaint alleges that Statement of Breach and Non-Performance failed to inform Plaintiffs in writing, as required by the deed of trust, of their right to cure the default within at least thirty days and to bring a court action to assert the non-existence of default or any other defense.  Such requirements are, in fact, found in paragraph 22 of the deed of trust, and also paragraph 15, labeled "Notices," specifically states that all notices made in connection with the deed of trust must be in writing.  Defendants' argument, therefore, that Plaintiffs' had constructive notice of their rights because the deed of trust was a recorded instrument rings hollow.

The Court agrees with Defendants, however, that Plaintiffs have failed to and cannot

---

to cite to any authority which controverted its theory, despite the fact that he must clearly have been aware of such authority.  Any future submissions to this Court by Plaintiffs' attorney that fail to cite relevant authority will result in sanctions.

[4]Plaintiffs refer to a Statement of Breach or Non-Performance in their Complaint in a manner which suggests they received such a document.  Neither they nor Defendants, however, have attached this document to the Complaint or Motion to Dismiss, respectively.

at this time allege damages stemming from the alleged breach. First, the Complaint does not specify what, if any, damages Plaintiffs suffered as a result of the alleged beach. Such an omission, however, is usually curable by filing an amended complaint, and the Court will often dismiss without prejudice or grant leave to amend. In this case, however, granting Plaintiffs' leave to amend would be futile. See Newland v. Dalton, 81 F.3d 904, 907 (9th Cir. 1995) ("While Fed. R. Civ. P. 15(a) encourages leave to amend, district courts need not accommodate futile amendments."). Because the state court entered a TRO, Bosco was unable to complete the non-judicial foreclosure. Because the foreclosure has not occurred, Plaintiffs have not suffered any damages as a result of Defendants' alleged breach of their notification obligations. In other words, any damages that would result from Defendants' failure to comply with the written-notice requirements of paragraph 22 of the deed of trust would arise only if foreclosure occurred without the required notice.

The Court also notes that even if Plaintiffs could allege damages suffered pre-foreclosure, it would not affect this Court's decision-making process with regards to Defendants' Motion to Dissolve Temporary Restraining Order. Assuming, without deciding, that Defendants breached their contract with Plaintiffs, it does not alter the fact that Plaintiffs defaulted on their obligations under the deed of trust, and absent curative action, Defendants may lawfully foreclose on their property. A successful contract claim under the theory advanced by Defendants would not, therefore, save Plaintiffs' property from foreclosure, it would merely compensate them for any damages as a result of the breach. And, to the extent that Plaintiffs might argue they would have cured their default if given the contractually required notice, the TRO entered by the state court over two months ago has given Plaintiffs ample opportunity to cure their breach, which is their right under Arizona law. See A.R.S. § 33-813.

4. Constitutionality of A.R.S. § 33-811(B)

Although not numbered as an individual claim, it seems clear that Plaintiffs' Complaint also seeks to challenge the constitutionality of A.R.S. § 33-811(B), which states, in pertinent part:

> The trustee shall execute and deliver the trustee's deed to the purchaser within seven business days after receipt of payment by the trustee or the trustee's agent made in a form that is satisfactory to the trustee. The recording of the trustee's deed upon sale may also constitute delivery of the deed to the purchaser. The trustee is not liable for any damages resulting from the failure to record the trustee's deed upon sale after physical delivery of the deed to the purchaser. *The trustee's deed shall raise the presumption of compliance with the requirements of the deed of trust and this chapter relating to the exercise of the power of sale and the sale of the trust property, including recording, mailing, publishing and posting of notice of sale and the conduct of the sale*.

(emphasis added). Specifically, Plaintiffs claim that the "presumption of compliance" should be held unconstitutional "as a violation of Distribution (Separation) of Powers Doctrine set forth in Art. 3 and Art. 4, Pt. 2, Section 19(5) of the Constitution of the State of Arizona as an unlawful encroachment on the rule-making power of the Arizona Supreme Court." The Court, however, need not consider the merits of Plaintiffs' argument, as they do not have standing to bring such a claim.[5]

Federal Courts are limited to deciding "cases" and "controversies." U.S. Const. art. III, § 2. Two important elements of the Article III case or controversy requirement are standing and ripeness. Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009). As the Ninth Circuit has explained, "[t]o have standing, a plaintiff must have suffered an injury in fact that is 'concrete and particularized;' that can be fairly traced to the defendant's action; and that can be redressed by a favorable decision of the court." Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "While standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addresses when litigation may occur." Id. For example, "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. (quoting "Texas v. United States, 523 U.S. 296, 300 (1998)). "That is so because, if the contingent events do

---

[5]"Federal courts are required *sua sponte* to examine jurisdictional issues such as standing." D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1035 (9th Cir. 2008). Thus, the fact that Defendants raised standing only in the context of their 12(b)(6) motion instead of in a 12(b)(1) motion, as required by the Federal Rules of Civil Procedure, does not preclude this Court from considering the issue.

1  not occur, the plaintiff likely will not have suffered an injury that is concrete and
2  particularized enough to establish the first element of standing." Id.

3  An injury that Plaintiffs' might suffer as a result of A.R.S. § 33-811(B)'s presumption
4  of compliance is entirely contingent upon future events which may or may not occur. To
5  wit, Plaintiffs Complaint alleges that "if the [non-judicial foreclosure] sale is allowed to
6  occur and following the issuance of a Trustee's Deed to the purchaser at sale, the purchaser
7  of the property at that sale will likely" evoke the presumption of compliance. Plaintiffs'
8  position, therefore, is predicated entirely on an event which might occur—foreclosure—and
9  a defense that might be raised by the purchaser of Plaintiffs' property—presumption of
10 compliance. Accordingly, any injury Plaintiff might suffer as a result of the purchaser
11 evoking the presumption of compliance is completely speculative and contingent on future
12 events. Plaintiffs' allegation concerning the unconstitutionality of A.R.S. § 33-811(B),
13 therefore, is not ripe and must be dismissed for lack of subject matter jurisdiction.

        5.   Claim 4: Payment / Cancellation of Mortgage

15 In their fourth claim for relief, Plaintiffs' allege that HSBC or another heretofore
16 unknown party may have purchased or collected proceeds available under one or more credit-
17 default swaps of which Plaintiffs' mortgage might have been a part, and that if they did, then
18 it is likely Plaintiffs' mortgage has been paid off and any debt owed by the Plaintiffs has been
19 extinguished. This claim, however, is based entirely on speculation, as Plaintiffs admit they
20 do not know if HSBC purchased a credit-default swap. Additionally, a credit-default swap
21 does not work in the manner suggested by Plaintiff. It is merely a financial instrument, akin
22 to insurance, used by corporations to transfer credit risk from one party to another. See PBS:
23 Frontline: Inside the Meltdown: Glossary of Financial Terms: Credit Default Swap,
24 http://www.pbs.org/wgbh/pages/frontline/teach/meltdown/glossary.html (last visited, July
25 8, 2010). To the extent a credit-default swap might technically pay off the money owed to
26 a bank when a homeowner defaults on his mortgage, the benefit most certainly does not
27 accrue to the homeowner who defaulted, which is the plain suggestion of Plaintiffs' claim.
28 Id. Accordingly, the Court must deny Plaintiffs' claim 4 for Payment / Cancellation of

Mortgage.

### 6. Claim 5: Negligent Misrepresentation

Plaintiffs allege that Defendants engaged in negligent misrepresentation. "To prove negligent misrepresentation, (1) there must be incorrect information given for the guidance of others in business dealings; (2) the party giving the false information intended that the other parties would rely on that information and failed to exercise reasonable care in obtaining or communicating that information; (3) the other parties were justified in relying on that incorrect information and actually relied to their detriment, and (4) such reliance caused their damages." Auto Fin. Specialists, Inc. v. ADESA Phoenix, LLC, 2010 U.S. Dist. LEXIS 46231, *11-12 (D. Ariz. May 10, 2010) (citing Taeger v. Catholic Family Cmty. Serv., 196 Ariz. 285, 995 P.2d 721, 730 (Ariz. Ct. App. 1999)). In their Complaint, Plaintiffs' allege that Defendants misrepresented to them that assignments of the deed of trust would be registered in MERS' database, instead of recorded in the Office of Maricopa County, and that but-for this misrepresentation they would never have executed the deed of trust. (Pls. Cplt. ¶94). Assuming, without deciding, such an allegation states a claim for relief, it is time barred, as the statute of limitations for a negligent misrepresentation claim is two years. Hullett v. Cousin, 204 Ariz. 292, 297 (2003) (citing A.R.S. § 12-542). Plaintiffs signed the deed of trust on or about May 30, 2007 and initiated this action more than two years later on May 4, 2010. The rest of the facts on which Plaintiffs' negligent misrepresentation Complaint rely are not misrepresentations at all; they are accusations of non-disclosure. More specifically, Plaintiffs set forth a litany of information they believe should have been disclosed, but was not. (Pls. Compl. ¶¶ 94–96). Failure to disclose information is different than giving false or incorrect information, which is the foundation of a negligent misrepresentation claim. See Auto Fin. Specialists, Inc., 2010 U.S. Dist. LEXIS 46231 at *12 ("[T]he claim of negligent misrepresentation fails because no incorrect information was given.").

### 7. Claim 6: Fraudulent Concealment

Plaintiffs' Sixth Count is for fraudulent concealment. To prove fraudulent

concealment, a plaintiff must show:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

Coleman v. Watts, 87 F. Supp. 2d 944, 951-952 (D. Ariz. 1998). First, the tort of fraudulent concealment contemplates punishing those who hide information with the intention of inducing another party to act. In this case, the only act Defendants could be described to have induced Plaintiffs to take is taking out a mortgage, i.e. signing the promissory note and deed of trust. Therefore, many of the facts on which Plaintiffs' claims are based are irrelevant, as they merely pertain to information Plaintiffs allege they are entitled to and has been withheld from them, but which they sought only after they learned of Defendants' intent to foreclose. This information, even if concealed from Plaintiffs, is completely unrelated to their having elected to enter into the mortgage agreement, and, therefore, irrelevant to a fraudulent concealment claim.

The only information Plaintiffs allege that Defendants concealed prior to Plaintiffs having agreed to the mortgage are: (1) Defendants failed to disclose that Plaintiffs' loan would be securitized; and that (2) Plaintiffs' would never be given the name of the assignee of their original lender or advised of the impact which the involvement of MERS would have on their ability to negotiate in good faith directly with their successor lender, as opposed to a loan servicer, when attempting to obtain a loan modification or approval of a proposed short sale. Plaintiffs' Complaint, however, does not explain how these facts are material. They are unrelated to the terms of the deed of trust or the obligations of both Parties contained therein. The materiality of such facts, if they could ever be described as material, derives only from imputing knowledge of the 2008 financial crisis and the reasons for it on to Defendants. Fraudulent concealment, however, requires Plaintiffs to prove the existence of a "concealment of a material *existing* fact," i.e. a fact that was material at the time of the Parties' agreement. While arguably material in 2010, the Court cannot find that the facts

plead by Plaintiffs were material in May 2007, before issues such as mortgage-backed securities, loan modification, and short-selling of homes were part of the national dialogue, and before the 2008 financial crisis.

        8. Claim 7: Appraisal Fraud

Finally, Plaintiffs' Complaint alleges that Defendants committed appraisal fraud. Their Complaint asserts that HSBC's in-house appraisal arm knowingly inflated home values during the real-estate boom in an effort to make more loans so that those loans could be sold on Wall Street, thereby increasing HSBC's fees and commissions. This allegation is not supported, however, by even a single fact. It borders on the conspiratorial and is merely conclusory. Therefore, it must be dismissed with prejudice.

    E.  <u>Defendants HSBC and MERS Motion to Dissolve Temporary Restraining Order</u>

Having determined that Plaintiffs' Complaint must be dismissed, the Court grants Defendants' motion to dissolve the TRO, as the need for such a TRO has clearly expired.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendants' HSBC and MERS' Motion to Dismiss Plaintiff's Complaint. (Doc. 8).

**IT IS FURTHER ORDERED** granting Defendant Michael A. Bosco's Motion for Ruling on Pending and Undecided Motion to Dismiss & Request for Attorney's Fees, Costs, and Sanctions. (Doc. 12).

**IT IS FURTHER ORDERED** granting Defendant Michael A. Bosco's Motion to Dismiss and for Attorney's Fees, Costs, and Sanctions. (Doc. 1). Bosco may file an application for his attorneys' fees and costs in this matter by August 30, 2010. The application shall include all briefing and supporting materials. Plaintiffs shall file a response by September 15, 2010, which shall also set forth all briefing and supporting materials.

**IT IS FURTHER ORDERED** granting Motion to Dissolve Temporary Restraining Order. (Doc. 10)

/ / /

1       **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 30th day of July, 2010.

_____
Mary H. Murguia
United States District Judge